IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

IN RE:

JOHN MICHAEL SHJEFLO and
PATRICIA LOUISE SHJEFLO,

        Debtors.

Filed / Docketed
February 19, 2008

Case No. 03-07454-M
Chapter 13

## MEMORANDUM OPINION

In theory, marriage is an "until death do us part" proposition: "what God has joined together, let no man put asunder." In fact, marriages in the United States go asunder at a consistently high rate.[1] The laws of our land do not require unhappy couples to stay together: each state has a body of statutes and judicial decisions allowing divorce. The question before the Court is whether the United States Bankruptcy Code permits parties who are going their separate ways via the divorce court to also part company in the bankruptcy court. The following findings of fact and conclusions of law are made pursuant to Federal Rule of Civil Procedure 52, made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014.

### Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and venue is proper pursuant to 28 U.S.C. § 1409.[2] Reference to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a). This is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A).

### Findings of Fact

---

[1] According to the National Center for Health Statistics, the marriage rate in the United States for calendar year 2005 was 7.5 marriages per 1,000 individuals, while the divorce rate was 3.6 divorces per 1,000 individuals. *See* www.cdc.gov/nchs/fastats.divorce.htm. This equates to a divorce rate of approximately 48%.

[2] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

John Michael Shjeflo and Patricia Louise Shjeflo ("Debtors") filed a joint petition for relief under Chapter 13 of the United States Bankruptcy Code on December 20, 2003. At the time of the case filing, Debtors were husband and wife, although separated. A plan was proposed and confirmed by order of the Court entered on May 24, 2004.[3] The plan has since been modified. Debtors are current on their obligations under the plan, and the plan is approximately eight months from completion. All payments under the plan are made by Mr. Shjeflo.

Debtors are now in the process of a divorce. On December 13, 2007, Ms. Shjeflo filed a notice of conversion seeking to convert her case to a case under Chapter 7 of the Bankruptcy Code.[4] The next day, the Clerk of this Court issued a "Memorandum of Document Deficiency," in which the Clerk advised Ms. Shjeflo that

> [a] Motion must be filed and an Order entered granting such a request for a Joint Debtor to sever themselves from the current case, which will open a new case, and then a Notice of Conversion may be reflied [sic]. The Motion may be filed using the Motions event "Sever Chapter 13 Case", along with the appropriate fee.[5]

Ms. Shjeflo complied with this directive and on December 27, 2007, filed a motion to "severe" [sic] her case from the current joint case, after which she intended to convert her then separate case to a case under Chapter 7 of the Bankruptcy Code.[6] In accordance with the fee schedule propagated by the Judicial Conference of the United States, Ms. Shjeflo tendered a filing fee of $235 with the motion.[7] Lonnie D. Eck, the Chapter 13 Trustee in this district ("Eck" or "Trustee"), has objected

---

[3] *Docket No. 20.*

[4] *Docket No. 73.*

[5] *Docket No. 74.*

[6] *Docket No. 76.*

[7] *See Docket No. 77.*

to the motion to sever, contending that "severing a joint case is not supported by statutory authority and should be denied."[8]

To the extent the "Conclusions of Law" contain any items which should more appropriately be considered "Findings of Fact," such items are incorporated herein by this reference.

## Conclusions of Law

Section 302 of the Bankruptcy Code allows for the filing of a joint case by married couples.

**§ 302. Joint cases**

(a) A joint case under a chapter of this title is commenced by the filing with the bankruptcy court of a single petition under such chapter by an individual that may be a debtor under such chapter and such individual's spouse. The commencement of a joint case under a chapter of this title constitutes an order for relief under such chapter.

(b) After the commencement of a joint case, the court shall determine the extent, if any, to which the debtors' estates shall be consolidated.[9]

This section was added during the major overhaul of the nation's bankruptcy laws in the late 1970s. The predecessor to the Bankruptcy Code, the 1898 Bankruptcy Act, contained no provision allowing for the filing of a joint bankruptcy case. The legislative purpose of § 302 appears to be to further administrative and economic convenience for the debtors and the court:

A joint case is a voluntary bankruptcy case concerning a wife and husband. Under current law, there is no explicit provision for joint cases. Very often, however, in the consumer debtor context, a husband and wife are jointly liable on their debts, and jointly hold most of their property. A joint case will facilitate consolidation of their estates, to the benefit of both the debtors and their creditors, because the cost of administration will be reduced, and there will only be one filing fee.[10]

---

[8] *Docket No. 81*.

[9] § 302.

[10] S. Rep. No. 95-989, at 32 (1978), *reprinted in* D Collier on Bankruptcy, at App. Pt. 4–1966 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.).

Nothing in the legislative history suggests that the ability of a husband and wife to file a joint case was meant to be anything more than a matter of convenience.

The Trustee argues that under § 302, the filing of a bankruptcy petition by a husband and wife results in the commencement of one, **and only one**, bankruptcy case. The Trustee contends that whatever is to be done to that case must be done to the case in its entirety, and that the case cannot in effect be split into two cases when husband and wife no longer agree as to their future course of action, or no longer intend to remain husband and wife.  As support for his position, the Trustee points to those provisions of the Bankruptcy Code that allow a debtor to convert to Chapter 7 or dismiss *a case* under Chapter 13 at any time,[11] the provision that discusses the effect of conversion "of a *case* from a case under one chapter of this title to a case under another chapter of this title,"[12] and the statute which talks about the effect of dismissal "of *a case* under this title[.]"[13]  In the eyes of the Trustee, a joint petition represents a single case not subject to further division, even though the individual debtors may be parted from one another through the process of divorce.

Ms. Shjeflo argues that severing a case must be allowable, since the Judicial Conference of the United States has decided to charge a fee to anyone attempting the procedure.[14]  She posits that if a debtor has an absolute right to dismiss or convert a Chapter 13 case, a debtor must have a

---

[11] *See* § 1307(a) & (b).

[12] § 348(a) (emphasis added).

[13] § 349(a) (emphasis added).

[14] *See Bankruptcy Court Miscellaneous Fee Schedule, ¶ 19* ("When a joint case filed under § 302 of Title 11 is divided into two separate cases at the request of the debtor(s), a fee shall be charged equal to the current filing fee for the chapter under which the joint case was commenced.  If the motion to divide the case is made for a Chapter 7 case, an additional fee of $15 shall be paid to the clerk of the court for payment to trustees serving in cases as provided in 11 U.S.C. § 330(b)(2).").

corollary right to escape from a joint case. Ms. Shjeflo contends that severance of the joint case into two separate cases is the most effective means to that end. She also notes the apparent absurdity in allowing a couple to go their separate ways in all places except for the bankruptcy court.

The parties have told the Court that there is no case law directly on point on this issue, and the efforts of the Court have confirmed those representations. There is, however, a developed body of case law on the issue of severance of improperly joined debtors in involuntary cases. Two schools of thought have developed on that issue. On one side, courts have held that there is no such thing as a joint involuntary bankruptcy case, and that the filing of such a petition is a legal nullity which fails to confer subject-matter jurisdiction upon the bankruptcy court. A second line of cases has held that, while it is beyond dispute that a joint involuntary petition is improper, the defect is one of procedure, not of substance, and the proper remedy is for the bankruptcy court to sever the improperly joined debtors into two separate involuntary cases.[15] In the present case, we have no issues of jurisdiction: no one contends that the filing of the original joint petition by the Debtors was improper.

One of the cases that ordered the severance of improperly joined involuntary debtors discussed at length the concept of a joint case as a single, and therefore indivisible, case, which is the main argument advanced by the Trustee here.

> Whatever currency the notion that the marital unit is a legal entity unto itself continues to hold under state law, the doctrine is not recognized by the Bankruptcy Code with respect to voluntary joint cases. That much is made clear by § 302(b), which states that "[a]fter the commencement of a joint case, the court shall determine the extent, if any, to which the debtors' estates shall be consolidated." If a joint case involved only one entity, then by logical extension there could be only one estate,

---

[15] *See Bank of America v. Weese*, 277 B.R. 241, 242–43 (D. Md. 2002) (collecting cases on both sides of the issue); *In re Bowshier*, 313 B.R. 232, 236 (Bankr. S.D. Ohio 2004) (same).

and talk of "consolidation" would be nonsensical. *See also* F.R.Bankr.P. 1015(b) ("If a joint petition ... [is] pending ... the court may order a joint administration of the estates."); 11 U.S.C. § 522(m) (stating generally that the property exemption provisions "shall apply separately with respect to each debtor in a joint case").

> ***Thus as a simple matter of statutory construction, the single-entity theory must be rejected insofar as it pertains to voluntary joint petitions. Many courts have recognized that a voluntary joint petition entails two separate legal entities and, at least until consolidation is ordered, two separate estates***.[16]

The court in *Gale* declined to dismiss the petition, and ordered the severance of the improperly joined debtors into two separate involuntary cases. The court in *Gale* also found additional support for severance of the cases in the provisions of Federal Rule of Civil Procedure 21, which allow that "[a]ny claim against a party may be severed and proceeded with separately."[17]

One court has dealt with the nature of a joint case from a slightly different perspective. In *In re Tabor*,[18] it was determined that while the husband was not eligible for Chapter 13 due to having debts in excess of the statutory limit, the wife was eligible to be a debtor under Chapter 13.[19] In the face of motions to dismiss filed by several creditors and the Chapter 13 trustee, the court determined that the debtor-husband was ineligible for relief under Chapter 13, and dismissed him as a debtor. The court expressly rejected the notion that the ineligibility of one debtor mandated the dismissal of the entire case.

> Mr. Tabor's ineligibility to be a chapter 13 debtor under 11 U.S.C. § 109(e) does not

---

[16] *In re Gale*, 177 B.R. 531, 534 (Bankr. E.D. Mich. 1995) (citations omitted) (emphasis added).

[17] *See* Fed. R. Civ. P. 21 (version effective prior to December 1, 2007).

[18] 232 B.R. 85 (Bankr. N.D. Ohio 1999).

[19] Currently, a Chapter 13 debtor may owe no more than $1,010,650 in noncontingent, liquidated secured debt and no more than $336,900 in noncontingent, liquidated unsecured debt. *See* § 109(e).

compel the dismissal of Mrs. Tabor as a chapter 13 debtor in the pending case. The impact of the ineligibility of one spouse on a joint chapter 13 case which could have been separately initiated by the other spouse appears not to have been addressed in any reported decision. However, when creditors have improperly initiated a joint involuntary case, the court has allowed the involuntary case to proceed by dismissing one spouse or allowing the commencement of a separate involuntary case against the second spouse. *King v. Fidelity Nat'l Bank,* 712 F.2d 188, 190-91 (5th Cir.1983); *In re Gale,* 177 B.R. 531 (Bankr. E.D. Mich.1995) (granting motion to sever involuntary petition filed against both husband and wife into two separate involuntary proceedings). Similarly, when a petition has been filed on behalf of an individual and a party who is neither a spouse nor an entity eligible to be a debtor, *i.e.,* a non-business trust, the court has allowed the case to proceed by dismissing the ineligible entity. *Hunt v. TRC Properties, Inc. (In re Hunt),* 160 B.R. 131, 136 (9th Cir. BAP 1993).[20]

In at least two other Chapter 13 cases, motions to sever a joint case into two separate bankruptcy cases have been granted, apparently without opposition.[21] Were we to apply the Trustee's rationale to *Tabor*, and take the position that the filing of a joint petition creates an indivisible entity, the result would have been the dismissal of that case, as half a case cannot stand.

Practical considerations also weigh against the position of the Trustee. If he is correct, couples who file joint cases may never function as separate entities in bankruptcy court. They must agree on every aspect of the case in order for the case to proceed. For example, § 1307(a) provides that "[t]he **debtor** may convert a case under this chapter to a case under chapter 7 of this title at any time."[22] Under the Trustee's scenario, if one spouse wants to convert a case, and the other does not, what is the result? Similarly, § 1307(b) provides that a **debtor** may dismiss a Chapter 13 case

---

[20] *Tabor*, 232 B.R. at 91–92.

[21] *See In re Krick*, 373 B.R. 593, 597 (Bankr. N.D. Ind. 2007); *In re Nelson*, 308 B.R. 343, 344 (Bankr. E.D. Wis. 2004) (noting that wife converted her case to Chapter 7 while husband remained in Chapter 13).

[22] § 1307(a).

7

which has not previously been converted.[23]  What if one debtor wishes to dismiss, and his or her spouse wants the case to continue?  Must the case be dismissed?  If one spouse has the ability to convert or dismiss a case without the agreement of the other spouse, the threat of dismissal or conversion could become a weapon in the divorce action.[24]  Surely this could not be the intent of Congress.

The Court concludes that the better course of action is to allow Ms. Shjeflo to sever her case from that of her husband and proceed in a separate case.  As authority for its decision, the Court relies upon its powers under § 105(a), the provisions of Bankruptcy Rule 7021, and Federal Rule of Civil Procedure 21.[25]  The practical considerations outlined above also heavily favor this outcome.  The Court is aware that, as part of its decision, the estates of the Debtors must be deconsolidated, as they were substantively consolidated by local rule upon the filing of the bankruptcy case.[26]  There is at least one decision where a joint Chapter 7 case filed by two unmarried persons was deconsolidated with separate orders for relief entered for each debtor.[27]  Neither of the

---

[23] § 1307(b).

[24] The facts of this case present such a scenario.  Mr. Shjeflo is making all of the payments under the terms of the confirmed plan in this case.  According to the Trustee, the case is approximately eight months from plan completion and discharge.  Mr. Shjeflo wishes to remain in Chapter 13, make the remaining payments and receive his discharge.  If Ms. Shjeflo had the unilateral right to dismiss the case, she could in effect hold Mr. Shjeflo's discharge hostage.

[25] Fed. R. Bankr. P. 7021 (which incorporates Fed. R. Civ. P. 21) applies in contested matters, unless the court expressly directs otherwise, which the Court declines to do in this case. *See* Fed. R. Bankr. P. 9014(c).

[26] *See* Bankr. N.D. Okla. LR 1015 (effective date April 1, 2000).

[27] *In re Wilkerson*, 2006 WL 3694638 (Bankr. M.D. Ga. 2006).  One of the main reasons behind deconsolidation in *Wilkerson* was the preservation of the trustee's avoidance powers. *See also Ferguson v. Johnson (In re Johnson)*, 2002 WL 32001405 (Bankr. M.D.N.C. 2002) (noting

parties have suggested that deconsolidation of the estates presents an obstacle in this case, and there is no evidence in the record suggesting that deconsolidation would work a hardship upon either debtor, the Trustee, or a trustee appointed in Ms. Shjeflo's case should the same be converted to Chapter 7.

## Conclusion

The motion to sever is granted. Ms. Shjeflo shall be allowed to proceed as a debtor in a case separate and distinct from the case in which her husband is a debtor. The Clerk of this Court shall create a new case for Ms. Shjeflo, and assign said case a new case number. The date of the order for relief in the severed case shall be the same date as the date of the order for relief in the original joint case.

A separate judgment consistent with this Memorandum Opinion is entered concurrently herewith.

Dated this 19th day of February, 2008.

BY THE COURT:

TERRENCE L. MICHAEL
UNITED STATES BANKRUPTCY JUDGE

5148.4

---

without comment that debtor "deconsolidated" her case from that of her spouse upon their separation).